1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ADA ELIZABETH VARGAS,                Case No.  1:22-cv-01360-HBK

12              Plaintiff,                ORDER DENYING PLAINTIFF'S MOTION
                                          FOR SUMMARY JUDGMENT, GRANTING
13         v.                             DEFENDANT'S MOTION FOR SUMMARY
                                          JUDGMENT, AND AFFIRMING THE
14   MARTIN O'MALLEY,                     DECISION OF THE COMMISSIONER OF
     COMMISSIONER OF SOCIAL               SOCIAL SECURITY[2]
15   SECURITY,[1]
                                          (Doc. Nos. 16, 21)
16              Defendant.

17

18

19         Ada Elizabeth Vargas ("Plaintiff"), seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21   supplemental security income and disability insurance benefits under the Social Security Act.

22   (Doc. No. 1).  The matter is currently before the undersigned on the parties' briefs, which were

23   submitted without oral argument.  (Doc. Nos. 16, 21-22).  For the reasons set forth more fully

24   below, the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion for

25   summary judgment, and affirms the Commissioner's decision.

26   _____

27   [1] The Court has substituted Martin O'Malley, who has been appointed the Acting Commissioner of Social
     Security, as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d).
     [2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
28   §636(c)(1).  (Doc. No. 23).

# I.   JURISDICTION

Plaintiff protectively filed for supplemental security income and disability insurance benefits on January 9, 2018, alleging a disability onset date of January 17, 2017.  (AR 255-72). Benefits were denied initially (AR 88-113, 136-40) and upon reconsideration (AR 114-35, 147-52).  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on April 10, 2020, and a subsequent hearing on September 14, 2021.  (AR 36-87).  Plaintiff testified at the hearings and was represented by counsel at the second hearing.  (*Id*.).  The ALJ denied benefits (AR 12-35) and the Appeals Council denied review (AR 1-6).  The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

# II.   BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 32 years old at the time of the first hearing.  (*See* AR 308).  She graduated from high school and completed some college courses.  (AR 63).  She lives with her two nine year old children.  (AR 61).  She has a work history as a cafeteria attendant.  (AR 65-70, 82). Plaintiff testified that she can no longer work because of panic attacks, anxiety, and depression. (AR 71-72).  She reported having panic attacks three to four days per week during the relevant adjudicatory period, causing her to call an ambulance "maybe" twice a month.  (AR 73-74). Plaintiff testified that she would need to lay down 4 times a day for 30 minutes at a time due to side effects from her mental health medication.  (AR 75-76).  She has crying "spells" that trigger panic attacks five times per week, difficulty concentrating, and memory problems.  (AR 76-77). She previously experienced leg swelling and needed to elevate her legs for three to five hours per day.  (AR 78).  Plaintiff reported she has neck and lower back pain "all the time," and on a typical day her neck and shoulder pain is a 4-5 on a scale of 10.  (AR 79).  She testified that she can stand for 30-40 minutes, walk 15 minutes before she has to stop and take a break, sit 15-25 minutes before she needs to stand up, and cannot lift and carry anything heavier than a gallon of milk. (AR 80).

1    ### III.    STANDARD OF REVIEW

2        A district court's review of a final decision of the Commissioner of Social Security is

3    governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

4    Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

5    is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

6    evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

7    conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

8    equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

9    citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

10   consider the entire record as a whole rather than searching for supporting evidence in isolation.

11   *Id.*

12       In reviewing a denial of benefits, a district court may not substitute its judgment for that of

13   the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

14   to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

15   2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

16   harmless. *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

17   nondisability determination." *Id.* (quotation and citation omitted).  The party appealing the ALJ's

18   decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556

19   U.S. 396, 409-10 (2009).

20   ### IV.    SEQUENTIAL EVALUATION PROCESS

21       A claimant must satisfy two conditions to be considered "disabled" within the meaning of

22   the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

23   activity by reason of any medically determinable physical or mental impairment which can be

24   expected to result in death or which has lasted or can be expected to last for a continuous period

25   of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the

26   claimant's impairment must be "of such severity that he is not only unable to do his previous

27   work[,] but cannot, considering his age, education, and work experience, engage in any other kind

28   of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A),

1  1382c(a)(3)(B).

2      The Commissioner has established a five-step sequential analysis to determine whether a

3  claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

4  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§

5  404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity,"

6  the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b),

7  416.920(b).

8      If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

9  two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

10  C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or

11  combination of impairments which significantly limits [his or her] physical or mental ability to do

12  basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).

13  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner

14  must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

15      At step three, the Commissioner compares the claimant's impairment to severe

16  impairments recognized by the Commissioner to be so severe as to preclude a person from

17  engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If

18  the impairment is as severe or more severe than one of the enumerated impairments, the

19  Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d),

20  416.920(d).

21      If the severity of the claimant's impairment does not meet or exceed the severity of the

22  enumerated impairments, the Commissioner must pause to assess the claimant's "residual

23  functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

24  ability to perform physical and mental work activities on a sustained basis despite his or her

25  limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth

26  steps of the analysis.

27      At step four, the Commissioner considers whether, in view of the claimant's RFC, the

28  claimant is capable of performing work that he or she has performed in the past (past relevant

work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of

performing past relevant work, the Commissioner must find that the claimant is not disabled.  20

C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the

analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the

claimant is capable of performing other work in the national economy.  20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also

consider vocational factors such as the claimant's age, education, and past work experience.  20

C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other

work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis

concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20

C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180

F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2),

416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.     ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

since January 17, 2017, the alleged onset date.  (AR 17).  At step two, the ALJ found that Plaintiff

has the following severe impairments: polyarthropathy and obesity.  (AR 17).  At step three, the

ALJ found that Plaintiff does not have an impairment or combination of impairments that meets

or medically equals the severity of a listed impairment.  (AR 20).  The ALJ then found that

Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except she requires a sit/stand option with the ability to alternate
> between positions every hour.  She can frequently operate foot
> controls, bilaterally; never climb ladders, ropes, or scaffolds; and
> occasionally climb ramps and stairs, balance, stoop, kneel, crouch,

and crawl.  The claimant cannot work at unprotected heights or with moving mechanical parts.

(AR 21).  At step four, the ALJ found that Plaintiff is unable to perform past relevant work.  (AR 27).  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including office helper, information clerk, and counter clerk.  (AR 28).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 17, 2017, through the date of the decision.  (AR 29).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ erred at step two; and

2.  Whether the ALJ properly weighed the medical opinion evidence.

(Doc. No. 16 at 8-16).

## VII.   DISCUSSION

### A.  Step Two

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  When a claimant alleges a severe mental impairment, the ALJ must follow a two-step "special technique" at steps two and three.  20 C.F.R. § 404.1520a.  First, the ALJ must evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [he or she has] a medically determinable impairment."  20 C.F.R. § 404.1520a(b)(1).  Second, the ALJ must assess and rate the "degree of functional limitation resulting from [the claimant's] impairments" in four broad areas of functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. §

404.1520a(b)(2)-(c)(4).  Functional limitation is measured as "none, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  If the limitation is found to be "none" or "mild," the impairment is generally not considered to be severe.  20 C.F.R. § 404.1520a(d)(1).  If the impairment is considered severe, the ALJ proceeds to determine whether the impairment meets or is equivalent in severity to a listed mental disorder.  20 C.F.R. § 404.1520a(d)(2)-(3).

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  Here, the ALJ found that Plaintiff had the following severe impairments: polyarthropathy and obesity.  (AR 17).  The ALJ then found that Plaintiff's mental health impairments of anxiety and depression were medically determinable, but "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  (AR 18).  Plaintiff contends the ALJ erred at step two by failing to identify her mental health impairments as severe.  (Doc. No. 16 at 12-16).

First, the ALJ found that Plaintiff's "anxiety and depression is noted throughout the record, but with largely unremarkable mental status examinations by many providers," and the "record does not reflect crisis treatment in the last 12 months despite the claimant's allegations of panic attacks three to four times per week."  (AR 18-19 (also noting minimal mental health treatment and failure to attend scheduled mental health appointments)).  Plaintiff generally argues that the ALJ "did not understand the inherently subjective nature of mental illness," and therefore erred by "focus[ing] on the lack of objective findings contained within the record as opposed to noting that Plaintiff's mental illness did not lend itself to such findings." (Doc. No. 16 at 13).  This argument is misplaced.[3]  A plain reading of the ALJ's findings indicate that he did not find

---

[3] Plaintiff cites *Sanchez v. Apfel*, and the cases cited in *Sanchez*, to support her argument that the ALJ's reliance on objective evidence is "improper."  (Doc. No. 16 at 13).  The Court notes that *Sanchez* is

1   Plaintiff's anxiety and depression were not severe at step two based on a complete lack of

2   objective evidence; rather, the ALJ acknowledged that Plaintiff's anxiety and depression were

3   noted throughout the record but found the examinations by "many providers" were largely

4   unremarkable.  (AR 18).  Plaintiff contends that "[i]t is important to note that Plaintiff did not

5   undergo mental status evaluations by her medical providers.  Rather, all notations of her anxiety

6   were contained within the context of physical examinations.  This evidence further indicates that

7   the ALJ wholly failed to understand the very nature of Plaintiff's impairment."  (Doc. No. 16 at

8   14).  However, as noted by Defendant and cited by the ALJ, Plaintiff did engage in mental health

9   treatment, albeit minimal, and the record does include mental status examinations noting normal

10  affect, normal mood, normal recent and remote memory, and full orientation.  (Doc. No. 21 at 16

11  (citing AR 1726 (Plaintiff "reported she is doing well"), 1740 (mood was "unremarkable"); *see

12  also* AR 19, 1538, 1558, 1563, 1594, 1602.  Moreover, regardless of the unremarkable

13  examinations, the ALJ nonetheless found that Plaintiff's alleged anxiety and depression *are*

14  medically determinable.  (20 C.F.R. § 404.1521 ("a physical or mental impairment must be

15  established as an initial matter by objective medical evidence from an acceptable medical

16  source")).

17          Next, as noted by Defendant, the ALJ proceeded to evaluate severity according to the

18  "special technique" criteria set out in the regulations to determine the degree of limitation

19  resulting from the impairment in four specific functional areas, and found no limitations in

20  understanding, remembering, or applying information; mild limitations in interacting with others;

21  mild limitations in concentrating, persisting, and maintaining pace; and mild limitations in

22  adapting or managing oneself.  (AR 19); 20 C.F.R. § 404.1520a.  Thus, the ALJ concluded that

23  "[b]ecause Plaintiff's medically determinable impairments cause no more than 'mild' limitation

24

25  distinguishable from Plaintiff's general argument here, as the court in *Sanchez* specifically found that in
    assessing plaintiff's impairments at step two, it was error for the ALJ to reject the opinion of plaintiff's

26  treating physician solely on the ground that no objective evidence was offered in support of the
    assessment.  *Sanchez v. Apfel*, 85 F. Supp. 2d 986, 992 (C.D. Cal. 2000), *distinguished by Miller v. Colvin*,

27  2016 WL 4059636, at *3 n.4 (C.D. Cal. Jul. 28, 2016) (finding "[w]hile objective laboratory testing may
    not be available, mental health practitioners regularly use clinical evidence such as mental status

28  examinations and/or standardized psychological testing").

1  in any of the functional areas and the evidence does not otherwise indicate that there is more than

2  a minimal limitation in [her] ability to do basic work activities, they are nonsevere." (AR 19).

3  Plaintiff does not specifically challenge the ALJ's "special technique" findings in her opening

4  brief, arguably aside from a brief assertion that "courts have long held that the ability to interact

5  with medical providers does not equate to the ability to interact with supervisors, coworkers, or

6  the public on a regular and continuing basis." (Doc. No. 16 at 15). However, it was reasonable

7  for the ALJ to consider Plaintiff's interactions with medical professionals for the specific purpose

8  of assessing the broad functional category of "interacting with others" as part of the "special

9  technique" analysis at step two. Moreover, while largely unchallenged by Plaintiff in her opening

10  brief, the ALJ's "special technique" evaluation, and therefore the ultimate conclusion that

11  Plaintiff's anxiety and depression were nonsevere, was supported by substantial evidence in the

12  record including, but not limited to, unremarkable mental status examinations, ability to function

13  independently in daily activities including managing her household and children, interacting

14  appropriately with medical professionals, attending appointments, grocery shopping, taking care

15  of her grandmother, caring for herself and her children, managing finances, attending to her

16  personal care, and expressing that much of her concentration issues was due to worry about her

17  children especially during the COVID-19 pandemic. (AR 19); *see Carmickle v. Comm'r, Soc.*

18  *Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not

19  raised with specificity in Plaintiff's briefing).

20       Based on the foregoing, substantial evidence supports the ALJ's conclusion that Plaintiff's

21  claimed mental health impairments were not severe at step two;[4] and further, as argued by

22  Defendant, any error would be harmless because the ALJ proceeded through the sequential

23  ────────────────────

24  [4] The ALJ also noted that Plaintiff participated in "minimal, conservative mental health treatment." (AR 18-19). Plaintiff cites multiple district court cases to support an argument that "the evidence that [she] was prescribed multiple, varying psychiatric medications fully supports the conclusion that Plaintiff's

25  treatment was not conservative." (Doc. No. 16 at 14-15). Defendant argues that Plaintiff's argument is misleading because she was consistently prescribed only two medications for her mental health. (Doc. No.

26  21 at 17 (citing *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling.")). Even assuming, arguendo, that the ALJ

27  erred in noting that Plaintiff's treatment for mental health impairments was "conservative," any error would be harmless because, as discussed in detail *supra*, the overall findings at step two were supported

28  by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

evaluation and considered Plaintiff's mental impairments in the assessment of the RFC.  (Doc. No. 21 at 17); *see Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (error in considering impairment at step two was harmless because the step was resolved in plaintiff's favor); *Powers v. Comm'r of Soc. Sec.*, 2023 WL 7130716, at *14-15 (E.D. Cal. Oct. 30, 2023) (finding no error at step two when ALJ proceeded to subsequent steps of the sequential analysis and "plainly considered" the nonsevere mental health impairment in reaching the RFC determination).  Here, the ALJ explicitly recognized Plaintiff's alleged anxiety and panic attacks in determining her RFC (AR 22), including her reports of anxiety at treatment visits and Dr. Polasa's opinion that anxiety contribute to the severity of Plaintiff's functional limitations.  (AR 22-27).  Plaintiff fails to challenge the ALJ's consideration of her mental health symptom claims and, as discussed below, the ALJ did not err in considering any mental-health related limitations opined by Dr. Polasa.  Thus, Plaintiff fails to identify any properly supported limitation associated with her alleged mental health limitations that was not properly considered by the ALJ in subsequent steps of the evaluation and accounted for in the assessed RFC.  The Court finds no harmful error in the ALJ's finding that Plaintiff's claimed mental health impairments were not severe at step two.

### B.  Medical Opinions

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to

10

1    support or contradict a medical opinion or prior administrative medical finding" (including, but

2    not limited to, "evidence showing a medical source has familiarity with the other evidence in the

3    claim or an understanding of our disability program's policies and evidentiary requirements").  20

4    C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

5           Supportability and consistency are the most important factors, and therefore the ALJ is

6    required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2),

7    416.920c(b)(2).  Supportability and consistency are explained in the regulations:

8                 (1) Supportability. The more relevant the objective medical evidence
                  and supporting explanations presented by a medical source are to
9                 support his or her medical opinion(s) or prior administrative medical
                  finding(s), the more persuasive the medical opinions or prior
10                administrative medical finding(s) will be.

11                (2) Consistency. The more consistent a medical opinion(s) or prior
                  administrative medical finding(s) is with the evidence from other
12                medical sources and nonmedical sources in the claim, the more
                  persuasive the medical opinion(s) or prior administrative medical
13                finding(s) will be.

14   20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to,

15   explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

16   However, when two or more medical opinions or prior administrative findings "about the same

17   issue are both equally well-supported ... and consistent with the record ... but are not exactly the

18   same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3)

19   through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

20          The Ninth Circuit has additionally held that the new regulatory framework displaces the

21   longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and

22   convincing" reasons for rejecting a treating or examining doctor's opinion.  *Woods v. Kijakazi*, 32

23   F.4th 785, 787 (9th Cir. 2022).  Nonetheless, in rejecting an examining or treating doctor's

24   opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by

25   substantial evidence.  *Id.* at 792.  This means that the ALJ "must 'articulate ... how persuasive'

26   [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain

27   how [he or she] considered the supportability and consistency factors' in reaching these findings."

28

1    *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

2           In July 2021, Krishma Polasa, M.D., completed a treating source statement indicating he

3    had treated Plaintiff for sciatica for nine months and her prognosis was good.  (AR 1719).  Dr.

4    Polasa opined that Plaintiff would need a job that permitted shifting positions at will from sitting,

5    standing, or walking; would need to walk around every 90 minutes for 15 minutes; would need

6    unscheduled breaks every 15 minutes for 15-30 minutes at a time due to chronic fatigue and pain;

7    would need to elevate her legs knee high for 40% of an 8-hour work day; does not require a cane

8    or other hand-held assistive device; can never lift 10 pounds; can rarely twist and stoop, never

9    crouch and climb ladders, and occasionally climb stairs; and can reach overhead bilaterally 5% of

10   an 8-hour workday, reach in front of her body bilaterally 6-33% of an 8-hour workday, finger

11   33% of an 8-hour workday, and handle bilaterally 6-33% of an 8-hour workday.  (AR 1720-21).

12   Dr. Polasa additionally opined that Plaintiff is likely to be off task 25% or more of the workday,

13   is capable of low stress work, and is likely to be absent from work as a result of impairments or

14   treatment more than four days per month.  (AR 1721).  The ALJ found this opinion not

15   persuasive.  (AR 26).

16          First, as to supportability, the ALJ found Dr. Polasa's opinion "offers no objective

17   imaging, physical examinations, or even personal observations to support the assigned

18   limitations.  Dr. Polasa does not offer support for time off task or excessive absenteeism. . . . In

19   addition, Dr. Polasa indicates treatment relative to sciatica but offers manipulative limitations

20   without objective testing or physical examinations to support such extreme limitations."  (AR 26-

21   27).  Plaintiff argues "the medical records from Apex Medical Center, where Dr. Polasa treated

22   Plaintiff, routinely indicated Plaintiff had a limited range of motion as well as tenderness and a

23   limited ability to ambulate," and similarly contends that the record includes EMG tests showing

24   Plaintiff had left C6-C7 radiculopathy, abnormal clinical findings of the upper extremities, and

25   MRI results indicating straightening of the cervical lordosis and C4-C5 "minimal" posterior disc

26   bulge.  (Doc. No. 16 at 10-12 (citing AR 957, 969, 1120, 1359-61, 1434, 1438, 1453, 1457, 1527-

27   28 (also noting cervical MRI in 2019 was unremarkable), 1530 (also noting cervical MRI in 2021

28   showed no canal stenosis and no neural foraminal narrowing)).  However, under the new

12

regulations "the more relevant the objective medical evidence and supporting explanations *presented by a medical source* are to support" the medical opinion, the more persuasive the medical opinion will be.  20 C.F.R. § 404.1520c(c)(1); 416.920c(c)(1) (emphasis added); *see also Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusion."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.").  The records cited by Plaintiff in support of this argument are not Dr. Polasa's own treatment notes, nor does Plaintiff cite any portion of Dr. Polasa's opinion or treatment notes that reference objective medical evidence and/or supporting explanations for the severity of the opined limitations.  Based on the foregoing, substantial evidence supports the ALJ's finding that Dr. Polasa failed to support the severity of the opined limitations, including the likelihood to be off task 25% of a typical workday and absent more than 4 days every month, as well as severe manipulative limitations.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Second, as to the consistency factor, the ALJ found Dr. Polasa's opinion is inconsistent with the medical evidence as a whole including "progress notes from Dr. Polasa's own medical group including physical examinations showing normal motor strength and tone, normal movement of all extremities, and only minimal findings of swelling of the feet."  (AR 26 (citing, e.g., AR 1594, 1602)).  The ALJ also acknowledged that Plaintiff consistently reported arthralgias and joint pain with cramping, but noted Plaintiff simultaneously denied weakness, exhibits limited tenderness, no edema, normal gait and station, and normal mood and affect.  (AR 26-27, 1558).  As above, Plaintiff argues the progress notes from Dr. Polasa's medical group "routinely indicate" limited range of motion, tenderness, and limited ability to ambulate; and Plaintiff contends that the ALJ "impermissibly ignored" portions of the record including EMG test results showing left C6-C7 radiculopathy, depressed reflexes in the upper extremities, and MRI results showing straightening of the cervical lordosis and a C4-C5 posterior disc bulge.  (Doc. No. 16 at

1   10-12 (citing AR 957, 969, 1120, 1359-61, 1434, 1438, 1453, 1457, 1527-28, 1530)).  Even under

2   the new regulations, the ALJ may not "cherry-pick" evidence in discounting a medical opinion.

3   *See Timothy P. v. Comm'r Soc. Sec. Admin.*, 2022 WL 2116099, at *9 (D. Or. June 13, 2022)

4   ("Although *Woods* made it clear that the hierarchy among physicians' opinions no longer applies

5   in this Circuit, the court did not address whether the new regulations upend the entire body of

6   caselaw relating to medical evidence… It remains true that the ALJs may not cherry-pick

7   evidence in discounting a medical opinion.").  However, as noted by Defendant, the ALJ "was

8   aware" of the records cited by Plaintiff and acknowledged evidence that could be considered

9   more favorable to Plaintiff in the summary of medical evidence, including limited range of

10  motion, tenderness, swelling of the lower extremities, limits on ambulation, 4/5 strength in the

11  lower left extremity, EMG results showing radiculopathy of the cervical spine, and MRI results.

12  (Doc. No. 21 at 20-21; AR 22-24).

13          Moreover, the ALJ cited ongoing objective and clinical findings from the record that do

14  not support the degree of limitation assessed by Dr. Polasa, including evidence from records cited

15  by Plaintiff in support of her argument, including no edema, normal gait and station, 5/5 strength

16  in all extremities, 5/5 grip strength, normal muscle tone, ability to tandem walk and perform toe-

17  heel standing, only "limited" tenderness, normal EMG of the lower extremities, normal range of

18  motion, and negative straight leg tests.  (AR 22-24, 517, 521, 562, 961, 1120 (denied muscle

19  aches and weakness), 1156-58, 1363, 1377, 1387, 1531, 1558, 1594, 1602).  Thus, when viewing

20  the medical record as a whole, it was reasonable for the ALJ to conclude that the severity of

21  limitations assessed by Dr. Polasa were not consistent with the largely unremarkable examination

22  results across the longitudinal record.  *Burch*, 400 F.3d at 679 ("Where the evidence is susceptible

23  to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.");

24  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (ALJ is responsible for reviewing the

25  evidence and resolving conflicts or ambiguities in testimony).

26          The Court concludes that the ALJ's finding that Dr. Polasa's opinion was not persuasive is

27  supported by substantial evidence after proper consideration of the supportability and consistency

28  factors.

## VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ did not err at step two and properly considered the medical opinion evidence. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1.  Plaintiff's Motion for Summary Judgment (Doc. No. 16) is DENIED.

2.  Defendant's Cross-Motion for Summary Judgment (Doc. No. 21) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.

3.  The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:    February 16, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE